1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7   AYSHA ALI,                                    Case No.  3:23-cv-02694-JSC

8              Plaintiff,

9        v.                                       **ORDER GRANTING DEFENDANTS'**
                                                  **MOTION FOR SUMMARY**
10  SANOFI-AVENTIS U.S LLC, et al.,              **JUDGMENT**

                                                  Re: Dkt. No. 33
              Defendants.
11

12

13        Aysha Ali filed suit against Sanofi-aventis U.S. LLC and Sanofi US Services Inc.

14  (collectively "Sanofi"), after allegedly experiencing permanent changes in her hair thickness and

15  length due to a chemotherapy treatment manufactured by Sanofi.  (Dkt. No. 33-3 at 3.)  Ms. Ali

16  alleges a strict products liability claim due to Sanofi's failure to warn her about the possibility of

17  permanent hair loss, along with claims related to negligence and fraud.  (Dkt. No. 1. at 4.)  Now

18  pending before the Court are Defendants' motion for summary judgment and Plaintiff's motion for

19  a continuance of the summary judgment hearing pursuant to Federal Rule of Civil Procedure

20  56(d).  Having carefully reviewed the parties' submissions, the Court GRANTS Defendants'

21  motion for summary judgment and DENIES Plaintiff's motion for a Rule 56(d) continuance.

22  Defendants met their burden of demonstrating Ms. Ali's claims are barred by California's statute

23  of limitations as a matter of law. Moreover, Ms. Ali has failed to demonstrate any genuine issue of

24  material fact that could warrant a reasonable factfinder finding an exception to the statute of

25  limitations applies.

26                                      **BACKGROUND**

27        Sanofi manufacturers Taxotere, a chemotherapy used to treat breast cancer.  (Dkt. No. 6-26

28  ¶¶ 12, 113.)  Ms. Ali was treated with Taxotere from April 2008 until October 2008. (Dkt. Nos.

*United States District Court*
*Northern District of California*

33-3 at 15-16; 33-4 at 18.)  Before beginning chemotherapy, Ms. Ali was warned she would experience hair loss, but told the hair would start to return within a few weeks of stopping chemotherapy.  (Dkt. No. 40-2 at 7.)  A few weeks after stopping chemotherapy, Ms. Ali started to see some of her hair come back.  (*Id.*)  However, in the years after, Ms. Ali noticed the "length and thickness" was not the same as before her chemotherapy treatment.  (*Id.* at 17.)

Ms. Ali learned about the connection between Taxotere and permanent hair loss during a phone call with an attorney who asked if she had ever used Taxotere and told her about an ongoing lawsuit against manufacturers of Taxotere.  (Dkt. Nos. 33-4 at 5; 40-2 at 4.)  After that phone call, Ms. Ali filed a lawsuit against Defendants on December 5, 2017, as part of a multidistrict litigation ("MDL").  *In re Taxotere (Docetaxel) Product Liability Litigation* MDL (E.D. La., MDL No. 2740) (Dkt. No. 33-3 at 3.)  Ms. Ali asserts Taxotere caused her to suffer permanent chemotherapy induced alopecia, or hair loss, and alleges various claims against Defendants as a result, including failure to warn, negligent misrepresentation, and fraudulent concealment of Taxotere's risks.  (Dkt. Nos. 40 at 2; 7-1 at 13.)  Defendants assert Ms. Ali's claims are time-barred, as they are subject to a two-year statute of limitations.

## DISCUSSION

### A.  Legal Standard

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of producing evidence negating an essential element of each claim on which it seeks judgment or showing the nonmoving party cannot produce evidence sufficient to satisfy its burden of proof at trial.  *Nissan Fire & Mar. Ins. Co., Ltd. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir.2000).  "[T]he inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion."  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  Once the moving party meets its burden, the nonmoving party must show a material factual dispute exists.  *California v. Campbell*, 138 F.3d 772, 780 (9th Cir.1998).

Along with its opposition to the motion for summary judgment, Plaintiff makes a Rule

56(d) request to continue the summary judgment hearing to allow for further discovery to supplement the record. (Dkt. No. 39.)  Rule 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may: (1) defer considering the motion [for summary judgment] or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; and (3) issue any other appropriate order.

"A party seeking additional discovery under Rule 56(d) must explain what further discovery would reveal that is essential to justify [its] opposition to the motion[ ] for summary judgment." *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 678 (9th Cir. 2018) (quotations and citations omitted). While the party is not required to know with certainty what discovery will uncover, "for purposes of a Rule 56(d) request, the evidence sought must be more than 'the object of pure speculation.'" *Id.* (quoting *California v. Campbell*, 138 F.3d 772, 779–80 (9th Cir. 1998)).  "In particular, '[t]he requesting party must show [that]: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment.'"  *Id.* (quoting *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008)).

### B.  Applicable Statute of Limitations

Both parties agree California law applies to this dispute.  Further, pursuant to California Code of Civil Procedure § 335.1, both sides agree a two-year statute of limitations applies to all Ms. Ali's claims because they all relate to "personal injury claims based on [a] defective product[]."  *Eidson v. Medtronic, Inc.*, 40 F. Supp. 3d 1202, 1217 (N.D. Cal. 2014) (citing *Soliman v. Philip Morris Inc.*, 311 F.3d 966, 971 (9th Cir. 2002)).

Traditionally at common law, a cause of action accrues when [it] is complete with all of its elements—those elements being wrongdoing, harm, and causation." *Aryeh v. Canon Bus. Sols.*, Inc., 55 Cal. 4th 1185, 1191 (2013).  Thus, in a personal injury action like this one, ordinarily "[t]he action accrues on the date of injury."  *Goldrich v. Nat. Y Surgical Specialties, Inc.*, 25 Cal. App. 4th 772, 779 (1994), *as modified* (June 15, 1994); *see also Zamudio-Soto v. Bayer Healthcare Pharms. Inc.*, No. 15-CV-00209-LHK, 2017 WL 386375, at *6 (N.D. Cal. Jan. 27, 2017)

United States District Court
Northern District of California

1  ("Ordinarily, a personal injury cause of action accrues and the statute of limitations begins to run

2  at the time of the injury to the future plaintiff.") (cleaned up).

3       Defendants have the initial burden of establishing Plaintiff's claims accrued more than two

4  years before this lawsuit was filed.  *See Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1191

5  (2013).  However, the inquiry does not end there, as California law contains "a handful of

6  equitable exceptions to and modifications of the usual rules governing limitations periods."  *Id*. at

7  1192.  "These doctrines may alter the rules governing either the initial accrual of a claim, the

8  subsequent running of the limitations period, or both."  *Id.*  If Defendants satisfy their burden of

9  proving Plaintiff's claim accrued more than two years before she filed suit as a matter of law, then

10  the burden transfers to the Plaintiff, who must establish an exception to the statute of limitations

11  period applies to her claims.  *Id.; see also Invs. Equity Life Holding Co. v. Schmidt*, 195 Cal. App.

12  4th 1519, 1533 (2011), *as modified* (June 15, 2011) (explaining the plaintiff has the burden of

13  establishing "[b]oth the discovery rule and fraudulent concealment doctrine").

14       1.       **Plaintiff's claims accrued more than two years before she filed suit.**

15       It is undisputed Ms. Ali began taking Taxotere on August 15, 2008 (Dkt. No. 33-3 at 15-

16  16) and stopped taking Taxotere in October of 2008 (Dkt. No. 33-4 at 18).  Ms. Ali filed her

17  complaint more than nine years later, on December 5, 2017.  (Dkt. No. 33-3 at 2).

18       The parties disagree as to when the statute of limitations began to accrue in this case.  As an

19  initial matter, the parties dispute when the "injury" in this case occurred.  Defendants point to the

20  Master Complaint, which defines "Permanent Chemotherapy Induced Alopecia"—the asserted

21  injury in this case—as "an absence of or incomplete hair regrowth six months beyond the

22  completion of chemotherapy."  (Dkt. No. 6-26 ¶ 181.)  Plaintiff's Short Form Complaint

23  incorporates by reference the Master Long Form Complaint.  (Dkt. No. 1 at 1.)  "Judicial

24  admissions are formal admissions in the pleadings which have the effect of withdrawing a fact

25  from issue and dispensing wholly with the need for proof of the fact.  [They] are conclusively

26  binding on the party who made them." *Spokane Law Enf't Fed. Credit Union v. Barker* (*In re

27  Barker*), 839 F.3d 1189, 1195 (9th Cir. 2016)) (cleaned up); *see also Hakopian v. Mukasey*, 551

28  F.3d 843, 846 (9th Cir. 2008) ("Allegations in a complaint are considered judicial admissions").

United States District Court
Northern District of California

So, based on the definition in the long-form complaint, "Ms. Ali pleaded that she sustained her injury by April 2009," or six months after she ended her chemotherapy treatment.  (Dkt. No. 33 at 18.)[1]  *See also In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 995 F.3d 384, 390 (5th Cir. 2021) (analyzing the same Long-Form Master Complaint and finding the injury of permanent chemotherapy induced alopecia "is sustained when, six months after the completion of chemotherapy, a person has an absence of or incomplete hair regrowth").

Ms. Ali disputes the April 2009 designation as the date of injury, but Ms. Ali has not provided an alternative date of injury.  Choosing a definitive date for the alleged injury is somewhat complicated.  Ms. Ali has never been diagnosed with permanent hair loss.  (Dkt. No. 33-4 at 10.)  Moreover, Ms. Ali's hair loss was not linear: "some of Ms. Ali's hair that was not present at six months post chemotherapy did come back two years after treatment ended."  (Dkt. No. 40 at 7.)  However, even after two years, Ms. Ali testified the "length and thickness" of her hair had not returned to her hair's pre-chemotherapy levels.  (Dkt. No. 33-4 at 33.)

Thus, the undisputed evidence establishes the latest Ms. Ali's injury could have occurred is October 2010—two years after Ms. Ali completed her chemotherapy treatment, when she realized her hair was noticeably less thick and long than it had been before chemotherapy.  As the Court must view all facts in the light most favorable to Plaintiff, the Court will proceed by assuming this was the date of injury.  Since October 2010 is more than two years before Ms. Ali filed suit, Defendants met their burden of establishing Ms. Ali's claims are, on their face, barred by the statute of limitations.

### C.  Exceptions to the Statute of Limitations

As Defendants met their burden of establishing Plaintiff's product liability claims are barred by two-year statute of limitations as a matter of law, the burden shifts to Plaintiff to show some exception to the statute of limitations, or at least to demonstrate a genuine dispute of material fact as to whether such an exception applies.

---

[1] At oral argument, Plaintiff offered to amend the Master Complaint so Permanent Chemotherapy Induced Alopecia is no longer defined as occurring six months after the end of chemotherapy. However, in 2019, the MDL court denied Plaintiffs' request for leave to amend their Long-Form Complaint in exactly this way. (Dkt. No. 6-45 at 2.)

United States District Court
Northern District of California

Plaintiff alleges two such exceptions warrant extending the normal two-year statute of limitations in this case: first, she asserts the "discovery rule" should "postpone[] accrual" of her cause of action until 2017 because before then "a reasonable inquiry would not have led her to know of a connection between Taxotere and [Permanent Chemotherapy Induced Alopecia]" (Dkt. No. 40 at 8.); and second, she asserts the doctrine of fraudulent concealment should toll the statute of limitations because "Plaintiff did not have actual or constructive knowledge of the facts giving rise to her claims as a result of Defendants' intentional concealment." (Dckt. No. 40 at 9.)

### 1. Discovery Rule

Under California law, "a two-part analysis is used to assess when a claim has accrued under the discovery rule." *Alexander v. Exxon Mobil*, 219 Cal. App. 4th 1236, 1251 (2013). First, courts determine "whether the plaintiff possessed information that would cause a reasonable person to inquire into the cause of his injuries." *Id.* The "inquiry duty arises when the plaintiff becomes aware of facts that would cause a reasonably prudent person to suspect his injuries were the result of wrongdoing." *Alexander*, 219 Cal. App. 4th at 1251. Since, in a products liability case, "wrongdoing is essential to the cause of action" a "plaintiff's ignorance of wrongdoing involving a product's defect will usually delay accrual." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 813 (2005).

If the plaintiff was on such inquiry notice, then her duty to investigate is triggered and "it must next be determined whether 'such an investigation would have disclosed a factual basis for a cause of action.'" *Id.* (quoting *Fox*, 35 Cal.4th at 807). If a plaintiff is on inquiry notice, the plaintiff must establish "(1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." *Plumlee v. Pfizer, Inc.*, 664 F. App'x 651, 653 (9th Cir. 2016) (quoting *Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal.4th 623, 638 (2007)). This analysis contains both a subjective and objective component. "A plaintiff is held to her actual knowledge as well as knowledge that could reasonably be discovered through investigation of sources open to her." *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1109 (1988). Thus, "[a] patient who actually learns of the dangerous side effects of a drug she has taken ignores her knowledge at her peril, but the law only requires an investigation when a plaintiff has a reason to investigate."

*Nelson v. Indevus Pharms., Inc.*, 142 Cal. App. 4th 1202, 1208 (2006). "The question when a plaintiff actually discovered or reasonably should have discovered the facts for purposes of the delayed discovery rule is a question of fact unless the evidence can support only one reasonable conclusion." *Ovando v. Cnty. of Los Angeles*, 159 Cal. App. 4th 42, 61 (2008).

On the summary judgment record, every reasonable trier of fact would find Plaintiff was on inquiry notice more than two years before she filed suit. In her deposition, Ms. Ali admitted (1) she knew her sister's hair never fully regrew after her sister used Taxotere in the late 1990s or early 2000s (Dkt. No. 33-4 at 11-13); (2) before Ms. Ali began chemotherapy, she "assum[ed] it would take about a year or two" to regrow her hair (Dkt. No. 33-4 at 27); (3) two years after completing chemotherapy, in 2010, Ms. Ali's hair had not regrown to the same "length and thickness" as it had been before chemotherapy (Dkt. No. 33-4 at 33); and (4) Ms. Ali always attributed her hair loss "[t]o the chemo drug." (Dkt. No. 33-4 at 31.) Based on Ms. Ali's own testimony, every reasonable trier of fact would find by 2010 and certainly before 2015, a reasonably prudent person in Ms. Ali's position would realize they were suffering from permanent hair loss and suspect their chemotherapy drugs were the wrongful cause of that hair loss.

Plaintiff's contentions do not create a genuine dispute of material fact as to when Plaintiff was on inquiry notice. First, Ms. Ali asserts she did not learn "her hair loss may be permanent" until 2017, when she "spoke with an attorney" who asked if she had ever used Taxotere and told her about ongoing cases against Defendants. (Dkt. No. 40 at 8.). However, Ms. Ali's admission she has always attributed her hair loss to chemotherapy compels the conclusion she suspected wrongdoing by 2010, when she realized her hair had not grown back as expected. Second, Plaintiff argues "medical literature did not reflect a consensus causal connection" between Taxotere and permanent hair loss "until 2020," so Ms. Ali was not put on inquiry notice before then. (Dkt. 40 at 8.) Plaintiff does not cite any evidence for her assertion medical literature did not connect Taxotere to permanent hair loss until 2020. Moreover, Plaintiff's assertion Ms. Ali couldn't have known the "wrongful cause" of her hair loss until 2020 is belied by Ms. Ali filing this suit in 2017.

Since Ms. Ali was put on inquiry notice before 2015, she had a duty to investigate the

cause of her injuries—moving the Court to the second step of the discovery rule analysis.  Ms. Ali offers evidence from which a reasonable trier of fact could find the time and manner of her discovery: she learned about the connection between Taxotere and hair loss during a phone call with an attorney who asked if she had ever used Taxotere.  (Dkt. Nos. 33-4 at 5; 40-2 at 4.)  Ms. Ali remembers this conversation occurring sometime in the fall of 2017.  (Dkt. No. 33-4 at 9.)

However, the record does not provide evidence from which a reasonable trier of fact could find she was unable "to have made earlier discovery despite reasonable diligence." *Plumlee*, 664 F. App'x at 653 (cleaned up).  The Master Complaint itself alleges articles reporting a link between Taxotere and permanent hair loss—citing medical journals' publications beginning in 2006, a 2010 article from The Globe and Mail, and a 2010 CBS News article which described a group of women who called themselves "Taxotears," after they were left permanently bald after using Taxotere.  (Dkt. No. 6-26 ¶¶ 150-162.)  Each article described a link between permanent hair loss and Taxotere.  (*Id.*)  Since the Master Long Form Complaint is a judicial admission, Plaintiff has admitted with reasonable diligence she could have discovered a link between her unexpected hair loss and Taxotere. *See also In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 995 F.3d 384, 394 (5th Cir. 2021) (finding the articles described in the same master complaint indicate "[a] reasonable inquiry would have uncovered at least some information that linked Taxotere to persistent alopecia"); *In re Taxotere (Docetaxel) Prod. Liab. Litig. ("Durden")*, 860 F. App'x 886, 890–91 (5th Cir. 2021) (same); *Plumlee*, 664 F. App'x at 653-64 (finding articles which were "publicly available during the relevant limitations period" indicated plaintiff would have discovered the link between her injury and the defendant).

The evidence cited by Plaintiff does not create a genuine dispute.  She cites to the deposition of her oncologist, who "estimate[d]" he first learned "Taxotere was associated with the increased risk of permanent hair loss . . . somewhere probably in the 2013 to '15 timeframe." (Dkt. No. 40-7 at 6.)  But this evidence does not support an inference that any investigation into the cause of her unanticipated hair loss would have been futile.  There is no evidence she asked her oncologist about her perceived hair loss.  There is no evidence her oncologist ever looked into Taxotere and unanticipated hair loss.  And Plaintiff cites no case suggesting a single physician's

1    lack of awareness about a potential problem with a drug creates a genuine dispute as to whether a

2    plaintiff who suspects wrongdoing with reasonable diligence could not have discovered the factual

3    basis for her cause of action, especially when the plaintiff's complaint alleges causation based

4    upon articles published years before the plaintiff filed suit.

5       Ms. Ali asserts as a "lay person," she would have been unable to "ascertain not only the

6    permanency of her injury, but that Taxotere was associated with" it before 2017.  (Dkt. No. 40 at

7    8.)  Again, she cites nothing to support this attorney argument.  Moreover, California courts have

8    indicated "[a] duty of inquiry arises independently of a particular plaintiff's subjective

9    knowledge," and the duty of inquiry is not lessened when a plaintiff has "no experience" in the

10    relevant field.  *Mills v. Forestex Co.*, 108 Cal. App. 4th 625, 649 (2003).

11       Finally, Ms. Ali notes Defendants did not "update[] their warning label to reflect even case

12    reports of [permanent chemotherapy induced alopecia] being reported with Taxotere" until

13    December 2015.  (*Id.*)  However, under California law, "[a]ggrieved parties generally need not

14    know the exact manner in which their injuries were effected, nor the identities of all parties who

15    may have played a role therein."  *Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926, 932, (1994);

16    *see also Kline v. Turner*, 87 Cal. App. 4th 1369, 1371, 105 Cal. Rptr. 2d 699 (2001) ("Discovery"

17    occurs "not when the plaintiff became aware of the specific wrong alleged, but when the plaintiff

18    suspected or should have suspected that an injury was caused by wrongdoing.").  Thus, even if the

19    medical field had not conclusively established Taxotere caused hair loss in 2010, Ms. Ali's

20    suspicion her "chemo drug" was the cause of her hair loss indicates Ms. Ali's claims began to

21    accrue as soon as she was injured and suspected her chemotherapy treatment caused that injury.

22    *See Fox*, 35 Cal. 4th at 807 ("Under the discovery rule, suspicion of one or more of the elements

23    of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the

24    statute of limitations period.").

25       In sum, Plaintiff has failed to demonstrate a genuine issue of material fact as to whether the

26    delayed discovery rule applies to her case.

27           **2.**      **Fraudulent Concealment**

28       "A statute of limitations may be tolled if the defendant fraudulently concealed the

United States District Court
Northern District of California

existence of a cause of action in such a way that the plaintiff, acting as a reasonable person, did not know of its existence." *Hexcel Corp. v. Ineos Polymers, Inc*., 681 F.3d 1055, 1060 (9th Cir.2012). To establish fraudulent concealment, Plaintiff must prove "[Defendants] affirmatively misled [Plaintiff], and that [Plaintiff] had neither actual nor constructive knowledge of the facts giving rise to [her] claim despite [her] diligence in trying to uncover those facts." *Id.*

Ms. Ali claims "[h]ad Defendants been forthcoming with the link between [permanent chemotherapy induced alopecia] and Taxotere with Ms. Ali's prescribing oncologist, he would have informed her" of the risks of Taxotere. (Dkt. No. 40 at 9.) This claim mirrors Ms. Ali's complaint allegations that Defendants failed to warn her of Taxotere's potential impact on alopecia. (Dkt. No. 1 at 4.) However, to establish fraudulent concealment, the plaintiff must establish "active conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed," which "prevent[ed] the plaintiff from suing in time." *Guerrero v. Gates*, 442 F.3d 697, 706 (9th Cir.2006) (quotation marks and citations omitted); *see also Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1052 (9th Cir. 2008) ("The primary problem with plaintiffs' argument is that their alleged basis for [fraudulent concealment] is the same as their cause of action").

Here, the fraudulent concealment Plaintiff cites as the reason the statute of limitations should be tolled is the very same as the alleged actions which form the bases of her claims. For that reason alone, Plaintiff's fraudulent concealment claim cannot toll the statute of limitations in this case. Moreover, as discussed above, the undisputed evidence demonstrates Plaintiff did have "constructive knowledge of the facts giving rise to [her] claim" before 2015, and Plaintiff demonstrated no "diligence" in trying to discover what caused her hair loss before 2015. *Hexcel Corp.*, 681 F.3d at 1060; *see also Yetter v. Ford Motor Co.*, No. 19-CV-00877-LHK, 2019 WL 3254249, at *5 (N.D. Cal. July 19, 2019) ("[T]o merit application of the discovery rule or fraudulent concealment tolling, a plaintiff must allege that he exercised due diligence to uncover his injury") (citing *Allen v. Similasan Corp.*, 96 F. Supp. 3d 1063, 1071 (S.D. Cal. 2015)). Thus, Plaintiff has failed to establish a genuine dispute of material fact as to whether the statute of limitations should be tolled due to fraudulent concealment.

\*\*\*

In sum, viewing all facts in the light most favorable to Plaintiffs, the latest Ms. Ali sustained her injury was October 2010.  Moreover, Ms. Ali has failed to raise a genuine issue of material fact as to any exception to the application of the regular, two-year statute of limitations in this case.  Thus, because Ms. Ali did not file suit until December of 2017, all her claims are barred by the statute of limitations, and the Court GRANTS Defendant's motion for summary judgment. Because the statute of limitations bars all of Plaintiff's claims, including her claims related to fraud, the Court declines to address Defendants' additional fraud argument.

**E. Plaintiff's Rule 56(d) Request for Continuance**

Plaintiff asks Defendants' motion for Summary Judgment be continued until after the close of discovery.  As a threshold matter, Ms. Ali did not file a Rule 56(d) affidavit with her motion and has not set forth with specificity what facts she would seek if further discovery were permitted.  This alone suffices to deny her 56(d) motion. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 15-MD-02672-CRB, 2023 WL 4163397, at \*10 (N.D. Cal. June 22, 2023) ("Because the Counties fail to pinpoint specific facts that further discovery would elicit, the Counties' requests for further discovery [under Rule 56(d) are denied.")

Moreover, Ms. Ali has failed to show how any further discovery could change the Court's statute-of-limitations analysis.  The only facts Plaintiff describes as "relevant to the equitable tolling of the statute of limitations" relate to facts Plaintiff has already learned from the deposition of Ms. Ali's treating doctor.  (Dkt. No. 39 at 3.)  Moreover, the Court's determination Ms. Ali's claims are barred by the statute of limitations is based on Ms. Ali's own allegations and her deposition testimony.  Ms. Ali has not identified any further discovery that could alter the Court's conclusion that Ms. Ali's claims are time barred based on Ms. Ali's own admissions.

Ms. Ali's substantive arguments to the contrary are unpersuasive.  First, she asserts she has "not yet had an opportunity to amend her short form complaint to plead facts specific to her" fraud claim, so Defendant's motion for summary judgment based on Plaintiff's failure to plead allegations of fraud with specificity is premature.  (Dkt. No. 39 at 2.)  However, the Court has

determined Ms. Ali's claims are barred by the statute of limitations, not because she failed to adequately plead her claims.  Amending her pleading to include "facts specific to her" fraud claims would not change the Court's statute-of-limitations analysis.

Second, Plaintiff argues the Court should continue the summary judgment motion because "Ms. Ali does not know the nature of Defendants' affirmative defenses" and Defendants should not be allowed to take the position Taxotere does not cause permanent hair loss, but also argue Plaintiff was on notice in the years leading up to this lawsuit about the connection between Taxotere and hair loss.  (Dkt. No. 39 at 3.)  Plaintiff's assertions are incorrect—Defendants can argue both causation and assert Plaintiff was on notice for statute-of-limitations purposes. *See, e.g.*, *Dent v. Nat'l Football League*, 2023 WL 2983580, at *2 (9th Cir. Apr. 18, 2023).

Finally, Ms. Ali argues the MDL Court previously ruled alternative causation arguments of Defendants are better left for a jury to consider after completion of expert discovery.  (Dkt. No. 39 at 2.)  However, Plaintiff does not explain what information she would hope to obtain from expert discovery, or how expert discovery would make any difference to her statute-of-limitations arguments.

Thus, the Court DENIES Plaintiff's Rule 56(d) motion for a continuance.

### CONCLUSION

For the foregoing reasons, the Court GRANTS the Defendants' motion for summary judgment and DENIES Plaintiff's motion for a Rule 56(d) continuance.

This Order disposes of Docket Numbers: 33, 35.

**IT IS SO ORDERED.**

Dated: September 29, 2023

JACQUELINE SCOTT CORLEY
United States District Judge